1  EDMUND G. BROWN JR.
Attorney General of the State of California
2  MARY E. HACKENBRACHT
Senior Assistant Attorney General
3  LINDA BERG, State Bar No. 194667
Deputy Attorney General
4  NICHOLAS STERN, State Bar No. 148308
Deputy Attorney General
5   1300 I Street, Suite 125
P.O. Box 944255
6  Sacramento, CA 94244-2550
Telephone: (916) 323-3840
7  Fax: (916) 327-2319
Email: Nicholas.Stern@doj.ca.gov

8  Attorneys for Defendant Catherine E. Witherspoon

9

10                 IN THE UNITED STATES DISTRICT COURT

11            FOR THE EASTERN DISTRICT OF CALIFORNIA

12                      SACRAMENTO DIVISION

13

| | |
|---|---|
| 14 PACIFIC MERCHANT SHIPPING ASSOCIATION, | Case No.: 2:06-CV-02791-WBS-KJM |
| 15 | **DECLARATION OF PAUL MILKEY** |
| Plaintiffs, | **IN SUPPORT OF DEFENDANT** |
| 16 | **WITHERSPOON'S OPPOSITION TO** |
| | **MOTION FOR SUMMARY** |
| 17 v. | **JUDGMENT** |
| CATHERINE E. WITHERSPOON, | |
| 18 | Hearing:     July 9, 2007 |
| Defendant. | Time:     2:00 p.m. |
| 19 | Courtroom: 5 |
| | Judge:     Hon. William B. Shubb |

20

21

22      I, Paul Milkey, declare:

23      1.    The facts stated in this declaration are true of my own personal knowledge, and if

24  called as a witness in this matter I could and would testify competently thereto.

25      2.    The opinions stated in this declaration are based on my education, experience, and

26  knowledge of air pollution from diesel ship engines and related fields.

27      3.    I earned a Bachelor of Science degree in Environmental Engineering in 1989 from

28  California Polytechnic State University at San Luis Obispo.

4.    I am a Staff Air Pollution Specialist with the California Air Resources Board (CARB). I have held this position since 1999. From 1992 to 1998, I was an Air Resources Engineering Associate with CARB. From 1989 to 1992, I was an Air Resources Engineer for CARB. These titles represent a progression from an entry level engineer to the highest staff level possible at CARB (i.e., Staff Air Pollution Specialist).

5.    During 18 years at CARB, I have worked on a variety of projects, including programs to reduce emissions from paints and coatings, consumer products, and, over the last six years, ocean-going vessels.

6.    I was the lead staff person in the development of the Vessel Rules that are the subject of this litigation. I reviewed and analyzed data from a wide variety of sources, and made and oversaw numerous calculations related to vessel emissions, in order to develop the rule. Included in the data and material I reviewed are the following: data from the State Lands Commission, which records ocean-going vessel visits to California ports; literature estimating the growth of ocean-going vessel traffic; numerous technical reports on emission factors for both ocean-going vessels and land-based sources of pollution, including reports by CARB, the United States Environmental Protection Agency (USEPA), and Dr. Wayne Miller; the emissions inventory analyses for ocean-going vessels by CARB's emission inventory group, which analyzes levels of emissions inventories with and without the Vessel Rules; fuel specifications for bunker and residual fuels as well as for the fuels specified in the Vessel Rules: marine gas oil and marine diesel oil; and USEPA technical reports on bunker fuels. I have also observed a sample of residual fuel.

7.    I have reviewed many air pollution regulations applicable to ocean-going vessels and have a knowledge of such regulations generally. I have also had numerous meetings with ocean-going vessel owners and operators to discuss all the issues referenced in this declaration, including the ability of ocean-going vessels to use low sulfur distillates.

8.    In the process of developing the Vessel Rules, I helped design a survey of ocean-going vessels and reviewed its results. The survey contains substantial data about ocean-going vessel engines, fuels used by ocean-going vessels, and any modifications needed by ocean-going vessels

1  to use the fuels specified in the Vessel Rules.

2      9.    Since the Vessel Rules were promulgated, I have reviewed communications and

3  applications from ocean-going vessels seeking to qualify for alternative means of compliance

4  with the Vessel Rules.  I also reviewed the first fifty ocean-going vessel inspection reports by

5  CARB inspectors.

6      10.    Attached as Exhibit 1 is a true and correct copy of CARB, *Staff Report: Initial*

7  *Statement of Reasons For Proposed Rulemaking; Proposed Regulation for Auxiliary Diesel*

8  *Engines and Diesel-Electric Engines Operated on Ocean-Going Vessels within California*

9  *Waters and 24 Nautical Miles of the California Baseline*; Stationary Source Div., Emissions

10  Assessment Branch, (Oct. 2005)(appendices omitted).  I was a contributing author to this staff

11  report.

12      11.    Ocean-going vessels typically have one engine for propulsion and several auxiliary

13  engines to produce electricity (i.e., diesel-electric engines) for on-board uses, such as powering

14  navigation equipment and cargo refrigeration.  Some ocean-going vessels, like cruise ships, use

15  diesel-electric engines for both propulsion and on-board electricity.  These dual purpose, diesel-

16  electric engines and auxiliary engines are designed similarly – both are medium speed, four-

17  stroke diesel engines.

18      12.    Ocean-going vessels are among the world's most polluting mobile sources per ton of

19  fuel consumed.

20      13.    In California, ocean-going vessels emit sulfur oxides (SOx), nitrogen oxides (NOx),

21  and diesel particulate matter (PM) at a far higher rate than either stationary sources or other

22  mobile sources.

23      14.    Ocean-going vessels emit large amounts of pollutants because the vast majority of

24  Ocean-going vessels lack stringent pollution control requirements and burn the poorest quality

25  mobile source fuel.

26      15.    In 2004, ocean-going vessels made a total of about 9,400 calls on California ports.

27  Reports indicate that ocean-going vessel traffic is expected to increase 20 percent by 2010 and 90

28  percent by 2020.

Declaration of Paul Milkey

Case No.: 2:06-CV-02791-WBS-KJM

16. This projected increase in ocean-going vessel traffic will more than triple the emissions from ocean-going vessels visiting California by 2020.

17. CARB estimates that, in 2004, the auxiliary engines of ocean-going vessels traveling within twenty-four nautical miles of California's Coast generated about 3 tons per day of PM, 33 tons per day of NOx, and 22 tons per day of SOx. To put this in perspective, the NOx emissions form ocean-going vessel auxiliary engines alone exceed the NOx emissions form all petroleum refining operations in California combined. With increasing vessel traffic, CARB estimates that, absent regulation, by 2020 auxiliary engine emissions within twenty-four miles of the California coast will grow to 9 tons per day of PM, 95 tons per day of NOx, and 64 tons per day of SOx.

18. CARB estimates that 75 percent of ship auxiliary emissions released within 100 nautical miles from California's coast are emitted within twenty-four nautical miles of the coast.

19. Ocean-going vessels usually use bunker fuel, also called Intermediate Fuel Oil. Bunker fuel contains mostly residual fuel, the lowest grade – and cheapest – fuel available. Residual fuel is the very end product of the oil refining product, formulated from the residues remaining after the primary distilling stages of the refining process. It is a thick, tar-like mixture that must be heated to 100 to 200 degrees Celsius to become sufficiently liquid that it can be pumped into the engine and combusted there.

20. Residual fuel contains an average of 27,000 parts per million (ppm) of sulfur. By contrast, diesel fuel for trucks and other motor vehicles contains no more than 500 ppm. The Vessel Rules require auxiliary engines to use diesel with no more than 5,000 ppm sulfur.

21. Marine gas oil contains less than 5,000 ppm of sulfur on average.

22. Marine diesel oil sometimes contains more than 5,000 ppm of sulfur.

23. The Vessel Rules are resulting in substantial reductions in emissions that are contributing to California's air pollution. CARB estimates that, in 2007, the Vessel Rules will reduce PM emission by 2.7 tons per day, NOx by 1.9 tons per day, and SOx by 22 tons per day. CARB expects that, by 2020, the Vessel Rules will reduce PM by 7.0 tons per day, NOx by 4.4 tons per day, and SOx by 61 tons per day.

24. In the more than five months that CARB's Vessel Rules have been in effect, hundreds

1  of ocean-going vessels have visited California's ports thousands of times.

2      25.  Of all these Ocean-going vessels, the operator of only one – the SEABORN

3  LEGEND – was unwilling to comply with the Vessel Rules by switching fuels.  This ocean-

4  going vessel, a cruise ship, only rarely stopped at California's ports, so it qualified to pay the

5  noncompliance fee.  Two other ocean-going vessels have paid the noncompliance fees due to

6  temporary glitches, but these ocean-going vessels intend to comply in the future by switching

7  fuels.

8      26.  In the more than five months that CARB's Vessel Rules have been in effect, it appears

9  that virtually all ocean-going vessels subject to the Vessel Rules are complying with them.

10     27.  In a recent survey of over 447 ocean-going vessels, only 17 needed any modifications,

11  and those were just related to the addition of fuel tanks, piping, and pumps to hold and deliver

12  the low sulfur distillate.

13      I declare under penalty of perjury, under the laws of the United States of America, that the

14  foregoing is true and correct and that this Declaration was executed in Sacramento, California on

15  June11, 2007.

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Declaration of Paul Milkey                                    Case No.: 2:06-CV-02791-WBS-KJM

1

2

3        Paul Milkey

4    30280298.2.wpd
     SA2006304038
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Paul Milkey                                    Case No.: 2:06-CV-02791-WBS-KJM