UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PACIFIC MERCHANT SHIPPING
ASSOCIATION, a California mutual
benefit corporation,

        Plaintiff,

   v.

TOM CACKETTE, in his official
capacity as Executive Officer
of the California Air Resources
Board,

        Defendant,

and

NATIONAL RESOURCES DEFENSE
COUNCIL, INC.; COALITION FOR
CLEAN AIR, INC.; SOUTH COAST
AIR QUALITY MANAGEMENT
DISTRICT; CITY OF LONG BEACH,

        Defendant-Intervenors.

NO. CIV. S-06-2791 WBS KJM

<u>ORDER RE: MOTION FOR STAY OF
THE INJUNCTION PENDING APPEAL</u>

----oo0oo----

1

Plaintiff Pacific Merchant Shipping Association ("PMSA") brought this action against defendant Tom Cackette[1] to enjoin the adoption and enforcement of 13 C.C.R. § 2299.1 and 17 C.C.R. § 93118 ("the regulations") and obtain a declaration that the regulations are preempted by federal law and/or unconstitutional. Natural Resources Defense Council, Inc. ("NRDC"), Coalition for Clean Air, Inc. ("CCA")[2], South Coast Air Quality Management District ("SCAQMD"), and the City of Long Beach ("Long Beach") intervened as defendants, pursuant to this court's order of April 3, 2007. (April 3, 2007 Order.)

On August 30, 2007, this court granted plaintiff's motion for summary judgment and permanently enjoined defendants from enforcing the regulations. (August 30, 2007 Order 28.) On September 13, 2007, the clerk entered judgment in favor of plaintiff pursuant to this court's August 30, 2007 order. (Docket No. 98.) Defendants filed their notice of appeal to the United States Court of Appeals for the Ninth Circuit on September 13, 2007. (Docket No. 99.) Defendants now move for a stay of the injunction pending appeal or, alternatively, a stay of the injunction pending a similar motion to the Ninth Circuit.[3]

Once a notice of appeal is filed, the district court is

---

[1] Plaintiff originally filed this action against Catherine E. Witherspoon, who has since resigned. Cackette, the Chief Deputy Executive Officer and Acting Executive Officer of the California Air Resources Board ("CARB"), is automatically substituted, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The NRDC and CCA intervened and filed their papers jointly, and will therefore be referred to jointly as NRDC/CCA.

[3] The court heard this motion on an expedited basis.

2

divested of jurisdiction over the matters being appealed. <u>Natural Res. Def. Council, Inc. v. Sw. Marine Inc.</u>, 242 F.3d 1163, 1166 (9th Cir. 2001). However, the principle of exclusive appellate jurisdiction is not absolute. <u>Id.</u> Rather, the trial court retains the inherent power during the pendency of an appeal to act to preserve the status quo to ensure the effectiveness of the eventual judgment.[4]

Federal Rule of Civil Procedure 62(c), which allows a district court to "in its discretion . . . suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party," codifies the exception to the general rule of exclusive appellate jurisdiction. Rule 62(c) "does not restore jurisdiction to the district court to adjudicate anew the merits of the case." <u>McClatchy Newspapers v. Cent. Valley Typographical Union No. 46</u>, 686 F.2d 731, 734 (9th Cir. 1982). In addition, pursuant to Federal Rule of Appellate Procedure 8(a)(1), to obtain an injunction pending appeal from the Ninth Circuit, "[a] party must ordinarily move first in the district."[5]

---

[4] The "status quo" means the status quo as of the filing of the appeal. <u>Id.</u>; <u>Tribal Village of Akutan</u>, 859 F.2d 662, 663 (9th Cir. 1988). Here, therefore, the status quo at the time defendants filed the appeal is that defendants were enjoined from enforcing the regulations. Accordingly, the court does not need to grant defendant's motion to preserve the status quo.

[5] Pursuant to Federal Rule of Appellate Procedure 8(a)(2), a motion for injunction pending appeal may be made to the court of appeals or to one of its judges. Such a motion must "state that, a motion having been made, the district court denied the motion or failed to afford the relief requested." Fed. R. App. P. 8(a)(2)(A).

3

1        In deciding whether to grant an injunction pending
2   appeal, courts apply the standard employed when considering a
3   motion for a preliminary injunction. Akutan, 859 F.2d at 663;
4   Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983). In the
5   Ninth Circuit, to meet the criteria for a preliminary injunction,
6   the moving party must demonstrate "either (1) a combination of
7   probable success on the merits and the possibility of irreparable
8   injury, or (2) that serious questions are raised and the balance
9   of hardships tips sharply in its favor." Akutan, 859 F.2d at 663
10  (internal quotation marks omitted). These two "interrelated
11  legal tests" are not separate, but represent the "outer reaches
12  of a single continuum." Lopez, 713 F.2d at 1435 (quoting Los
13  Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d
14  1197, 1201 (9th Cir. 1980)). The required degree of irreparable
15  harm increases as the probability of success decreases. See Se.
16  Alaskas Conservation Council v. United States Army Corps of
17  Eng'rs, 472 F.3d 1097, 1100 (9th Cir. 2006); Ranchers Cattlemen
18  Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of
19  Agric., 415 F.3d 1078, 1092 (9th Cir. 2005); Clear Channel
20  Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir.
21  2003). The public interest standard is a separate consideration
22  in determining whether to grant equitable relief. Amoco Prod.
23  Co. v. Village of Gambell, 480 U.S. 531, 545 (1987); Hilton v.
24  Braunskill, 481 U.S. 770, 776 (1987).
25        A.   Success on Merits/Serious Legal Question
26        Several courts have observed that the "success on the
27  merits factor cannot be rigidly applied," because if it were, an
28  injunction would seldom, if ever, be granted "because the

4

district court would have to conclude that it was probably incorrect in its determination on the merits." <u>Oregon Natural Res. Council v. Marsh</u>, Civ. No. 85-6433-E, 1986 WL 13440, *1 (D. Or. 1986) (citing <u>Hinnebaugh v. Smith</u>, 476 F. Supp. 502, 510 (C.D. Cal. 1978)). Rather, district courts properly "stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." <u>Id.</u> (citing <u>Washington Metro. Area v. Holiday Tours</u>, 559 F.2d 841, 844 (D.C. Cir. 1977)). An injunction is "frequently issued where the trial court is charting a new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review." <u>Stop H-3 Ass'n v. Volpe</u>, 353 F. Supp. 14, 16 (D. Haw. 1972).

Defendants raise the arguments they made in opposition to the question presented by plaintiff's summary judgment motion: whether the regulations are permissible in-use regulations or emission standards preempted by § 209(e)(2) of the Clean Air Act, 42 U.S.C. §§ 7401-7671q ("CAA"), Pub. L. No. 84-159, 69 Stat. 322. The court has acknowledged that this is a difficult question. (August 30, 2007 Order 19:11.) Although the burden to establish likely success on the merits is more substantial after a decision on the merits than at the preliminary injunction stage, <u>Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog</u>, 945 F.2d 150, 153 (6th Cir. 1991), the court does not agree with plaintiff that this factor is dispositive in this case. While this court will not venture any opinion as to how the Court of Appeals will eventually rule, the court finds that

5

questions of law are sufficiently difficult so that the court must undertake an analysis of the other factors.

### B.   Irreparable Harm/Balance of Hardships

Defendants' appeal presents difficult questions of law. Accordingly, defendants must establish that they will suffer irreparable harm absent the stay and that the balance of the hardships "tips sharply in their favor." Se Alaska Conservation, 472 F.3d at 1100.  For the following reasons, defendants have not met their burden.

The irreparable harm claimed by defendants is nebulous at best.  Defendants contend that on an annual basis, the regulations prevent 31 deaths, 830 asthma attacks, 7,258 days of work loss, and 38,526 minor restricted activity days.  Any deaths, asthma attacks or other health problems caused or contributed to by air pollution are by definition the result of a combination of sources over a period of time.  This court cannot conclude, from what has been presented, that any number of deaths, asthma attacks or lost work days will be proximately caused by the additional air pollution created by ocean going vessels operating in full compliance with the CAA and all regulations promulgated by the EPA.

The court does not find it necessary to wade through the voluminous, contested factual issues over how much pollution will be reduced due to the regulations.  The crux of the issue-- something mentioned only in passing by plaintiff and not even addressed by defendants in their briefing--is the Eleventh Amendment.  The Eleventh Amendment prohibits federal courts from awarding money damages against the state treasury

retrospectively. See, e.g., Edelman v. Jordan, 415 U.S. 651 (1974); Ford Motor Co. v. Dep't of the Treasury, 323 U.S. 459 (1945). Defendants fail to argue that any exception to this well-established maxim of constitutional law would encompass this situation.[6] If the court granted the stay and the Ninth Circuit affirms this court's judgment, plaintiff's would suffer damages at the annual rate of $37.88 million. (Garrett Opp'n Decl. (Docket No. 104) ¶ 3.) Rule 62(c) contemplates that a court grants a stay "upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Because the State of California has not agreed to waive its sovereign immunity, and none of the other defendants will agree to post bond, the court cannot fathom what possible circumstances it could in good conscience grant defendants a stay without eviscerating plaintiff's hard-fought victory.

Although defendants may claim some irreparable harm in the sense that more pollution may be emitted than if the court granted a stay, the extent of irreparable harm is speculative. In contrast, plaintiff's irreparable harm--the cost of complying with the regulations--is more ascertainable. Considering the harm to plaintiff is concrete and the harm to defendants is

---

[6] For example, the Eleventh Amendment does not prohibit a federal court from awarding prospective or ancillary relief. See, e.g., Quern v. Jordan, 440 U.S. 332 (1979); Milliken v. Bradley, 433 U.S. 267 (1977); Edelman, 415 U.S. 651. Accordingly, the cost of complying with an injunction is something that can be compensated. However, the situation here appears to be the reverse in which the costs to plaintiff results from the state not being forced to comply with an injunction. Defendants fail to address the issue of whether ancillary or prospective relief could be awarded in the scenario that this court stays the injunction and the Ninth Circuit affirms the court's summary judgment order.

theoretical, the court cannot conclude that the balance of the harms tips sharply in favor of the defendants.

### C. The Public Interest

As defendants argue, preventing pollution and the consequential fatalities and negative effects on health is in the public interest. However, defendants' view of the public interest in this case is too narrow.

Plaintiff raises the public interest inherent in the proper functioning of the federal system by providing national governance in the laws controlling air pollution. The CAA makes "the States and the Federal Government partners in the struggle against air pollution." Gen. Motors Corp. v. U.S., 496 U.S. 530, 532 (1990). However, unlike regulation of pollution from stationary sources, regulation of motor vehicles has been primarily a federal project. See, e.g., Engine Mfrs. Ass'n, ex rel. Certain of its Members v. EPA, 88 F.3d 1075, 1078-82 (D.C. Cir. 1996); Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envtl. Conservation, 17 F.3d 521, 524-27 (2d Cir. 1994) ("MVMA"); Motor & Equip. Mfrs. Ass'n, Inc. v. EPA, 627 F.2d 1095, 1101-03, 1108-11, (D.C. Cir. 1979) ("MEMA"), cert. denied, 446 U.S. 952 (1980).

Indeed, regulation of ocean going vessels implicates not just national, but international uniformity. Specifically, the EPA's regulation of ocean going vessels coincided with similar action of the International Marine Organization (IMO). Bluewater Network v. EPA, 372 F.3d 404, 407 (D.C. Cir. 2004). In 1997, the IMO formally adopted Annex VI to the International Convention on the Prevention of Pollution from Ships, 1973, as

1 Modified by the Protocol of 1978 Relating Thereto (MARPOL), which
2 prescribes a nitrogen oxide emissions limit for certain diesel
3 engines.  Id.  Annex VI has recently been ratified by the
4 requisite number of IMO member countries and has taken affect.
5 Id.  The EPA set its regulations at same level as Annex VI.  Id.
6 (citing Control of Emissions of Air Pollution from New CI Marine
7 Engines at or Above 37 Kilowatts, 63 Fed. Reg 28,309, 28,313
8 (advance notice of proposed rulemaking) (May 22, 1998)).

9        Additionally, the regulations affect the field of
10 international maritime commerce, which has historically been
11 within the purview of the federal rather than the state
12 government.  United States V. Locke, 529 U.S. 89, 108 (2000).  In
13 Locke, the Supreme Court observed that maritime commerce is "an
14 area where the federal interest has been manifest since the
15 beginning of our Republic and is now well established."  529 U.S.
16 at 99.  Indeed, during the debates on the ratification of the
17 Constitution, the Federalist Papers touted the authority of
18 Congress to regulate interstate navigation without intervention
19 from separate states that would result in difficulties conducting
20 foreign affairs as a primary reason for adopting the
21 Constitution.  See Federalist Nos. 4, 6, and 22.  The public
22 interest is implicated by continuing to follow two hundred years
23 of precedent.

24        Another reason the public interest counsels against
25 defendants is the inherent value in the court's judgment having
26 meaning.  As discussed above, the Eleventh Amendment makes it
27 extremely difficult for plaintiff's victory to be compensated in
28 the event the Ninth Circuit affirms the injunction.

9

1 | Consequentially, defendants' position would render this court's
2 | opinion nugatory.  In addition to failing to reward plaintiff for
3 | its victory, a stay obliterates the consequences that must flow
4 | from a decision by this court--particularly one resulting from a
5 | careful review of nearly three hundred pages of briefing, over a
6 | hundred applicable precedents, and thousands of pages of
7 | documents.  A judgment of this court must have repercussions
8 | beyond advising the Ninth Circuit.  The court finds that the
9 | public interest balances against granting a stay.

10 |         The appeal on merits does implicate difficult questions
11 | of law.  However, defendants have not shown a high degree of
12 | likely success on the merits of their appeal nor have they shown
13 | that the balance of the harms tips decidedly in their favor.
14 | Moreover, defendants have not convinced this court that a stay is
15 | in the public interest.  Accordingly, the court must deny
16 | defendants' motion.

17 |         IT IS THEREFORE ORDERED that defendants' motion for a
18 | stay of the injunction pending appeal be, and the same hereby is,
19 | DENIED.

20 | DATED: October 4, 2007

                                    _____
                                    WILLIAM B. SHUBB
                                    UNITED STATES DISTRICT JUDGE

10